UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

FLOYD E. KOHN,

                    Plaintiff,                           Case No. 2:14-cv-137

v.                                                       Honorable R. Allan Edgar

UNKNOWN MYRON, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rutter, Bauman, Culbertson, Hunt, Ruhl, Rapelje, Childs and Rose. The Court will serve the complaint against Defendants Myron, Lindenmuth, Juranik, Lancor, and Piazza.

## Discussion

I.    Factual allegations

Plaintiff Floyd E. Kohn, a state prisoner currently incarcerated at the Alger Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against LMF Defendants Sergeant Unknown Myron, Resident Unit Manager Unknown Lindenmuth, Corrections Officer Unknown Juranik, Counselor Unknown Lancor, Inspector Unknown Rutter, Warden Catherine Bauman, and Psychologist Unknown Rose.  Plaintiff also names Saginaw Correctional Facility Defendants Resident Unit Manager Unknown Culbertson, Corrections Officer Unknown Hunt, Corrections Officer Unknown Piazza, Corrections Officer Unknown Ruhl, Warden Unknown Rapelje, and Social Worker Angela Childs.

In his complaint, Plaintiff alleges that Defendant Lindenmuth, who works as a counselor, has singled him out because he is homosexual and has repeatedly harassed him.  Plaintiff claims that Defendant Lindenmuth purchased a bra for him to wear using her own money and told him that if he did not wear it, he would be placed in segregation.  Defendant Lindemuth also moved Plaintiff to a cell near the front of the unit, so that she and other officers can keep an eye on Plaintiff and harass him all day.  Plaintiff claims that the rules are different for him than for other inmates because of his homosexuality and that Defendant Lindemuth has stated, "your [sic] homosexual and we have to watch your every move."

Plaintiff alleges that Defendant Myron called him a "fag" on numerous occasions in 2014, and that he has filed grievances on him.  Defendant Myron told Plaintiff that he had given Plaintiff's former cell mate Carlos Simms a pack of cigarettes so that he would assault Plaintiff.

Defendant Myron also repeatedly told Plaintiff that God hates fags and that Plaintiff and his cell mate would burn in Hell.

Plaintiff alleges that Defendant Juranik is the senior officer on Spruce Unit and states that in October of 2013, Defendant Juranik came into Plaintiff's shower, pointed at Plaintiff's naked body, and mouthed some words in a hushed tone. Plaintiff states that Defendant Juranik's pointing was sexual and "very creepy." Three days later, Defendant Juranik came into Plaintiff's cell and undid his pants. Plaintiff responded by gasping loudly, at which point Defendant Juranik left the cell.

Plaintiff states that he wrote to Defendant Bauman on numerous occasions, but that she refused to address the misconduct on the part of her staff. Plaintiff alleges that on May 14, 2014, he told Defendant Lancor that his bunkmate was threatening him and requested that either he or his bunkmate be moved. Plaintiff states that his bunkmate, Carlos Simms, was extremely violent and had previously placed a lock in a sock and beat his former cell mate nearly to death. Plaintiff told Defendant Lancor that Prisoner Simms had been slamming doors and telling Plaintiff that he was going to kill someone. Plaintiff asked to be placed in a cell with a prisoner who did not have a history of violence. Defendant Lancor responded by stating that since Plaintiff and Prisoner Simms were both homosexuals, they should be able to get along with each other. Plaintiff explained that not all homosexuals got along and asked why other inmates were allowed to choose their cell mates. Defendant Lancor responded that it was because he was a homosexual. Two days later, on May 16, 2014, Prisoner Simms attacked Plaintiff in the chow hall in front of officers in order to be moved to a different cell. Plaintiff did not fight back or protect himself, but was nonetheless placed in segregation.

-3-

Plaintiff alleges that Defendant Rose attempted to have Plaintiff seen by a psychiatrist because she thought Plaintiff had "Gender Identity Disorder."  Plaintiff told Defendant Rose that he had already been seen by a psychiatrist at Jackson and was found to be without any disorder. Plaintiff states that he knows that he is a man and that people with Gender Identity Disorder believe that they are the opposite sex.  Defendant Rose stated that Plaintiff should see a psychiatrist because he wears a bra, but Plaintiff reminded her that he was only doing so because Defendant Lindenmuth is making him wear one.  Plaintiff stated that if Defendant Lindenmuth saw him without his bra, she would deny him his shower.

Plaintiff alleges that he wrote to Defendant Rutter regarding the discriminatory practice of prison officials against homosexuals, to no avail.  Plaintiff claims that Defendant Piazza stalked him on the yard every time Plaintiff took his yard time.  On one occasion in late December, Defendant Piazza stopped Plaintiff and gave him a pat down search during a continuous light snow fall.  Defendant Piazza told Plaintiff to remove his hat and jacket and spread his legs.  Plaintiff complied and Defendant Piazza threw the outerwear onto the concrete.  Plaintiff states:

> "[Defendant Piazza] then grabbed my chest area and put my nipples between his thumb and index on both hands and said in my left ear that he had been waiting to catch me alone for sometime; he keep rubbing my chest area.  Then he said "you feel so good through this shirt," then he pressed his midsection / penis are upon my back midsection / butt area.  Then he said "I bet they arn't [sic] real breast, did you pay for em?" I said "can I go now," he finished the pat down in a regular fashion.  Then said "you don't have to be so closed up or stuck up I'm cool," I packed up my clothing and walked back into the unit.

*See* docket #1, p. 15 of 17.

-4-

Plaintiff alleges that Defendant Culbertson made a file on Plaintiff specifying all the ways that Plaintiff could be discriminated against and sent it to every officer in the unit.  Plaintiff states that Defendant Culbertson also refused to intervene to protect him from discrimination, and that she tried to force him to go to the doctor on three occasions because she thought he had GID [Gender Identity Disorder].  Plaintiff alleges that he reported staff misconduct to Defendant Rapelje numerous times, and that Defendant Rapelje failed to take any corrective action.  Plaintiff also alleges that Defendant Hunt was prejudiced against him and called him a "fag."

Plaintiff claims that Defendant Ruhl tampered with his medical files, asked medical staff invasive questions, and attempted to have Plaintiff placed on GID status, so that Plaintiff would be moved to another facility.  Defendant Childs attempted to have Plaintiff placed on GID status, despite the fact that she is not a physician.  Plaintiff sues Defendants in their individual and official capacities and seeks damages and equitable relief.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff's claims against Defendants Rutter, Bauman and Rapelje involve the denial of administrative grievances or the failure to act on Plaintiff's complaints. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or

otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims

-7-

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Rutter, Bauman, and Rapelje were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Rutter, Bauman, and Rapelje had in this action involve the denial of administrative grievances or the failure to act. Defendants Rutter, Bauman, and Rapelje cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Rutter, Bauman, and Rapelje are properly dismissed for lack of personal involvement.

In addition, to the extent that Plaintiff is seeking damages against Defendants in their official capacities, such claims do not state a claim upon which relief can be granted. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). "State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) (*citing Will,* 491 U.S., at 71, and n. 10).

Plaintiff claims that Defendants in this case discriminated against him on the basis of his sexual preference. For legislation which burdens the interests of homosexuals, the lowest level lowest level of scrutiny, or the "rational relationship" test, is appropriate. *Romer v. Evans*, 517 U.S. 620, 632 (1996); *Equality Found. of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 294 (6th Cir. 1997); *see also Gay Inmates of Shelby County Jail/Criminal Justice Complex v. Barksdale*, No. 84-5666, 1987 WL 37565, at *3 (6th Cir. June 1, 1987) (applying rational basis test to a sexual orientation classification in a prison). In the context of prisons, the regulation, policy or

practice must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

> In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.' " Engquist, 553 U.S. at 601 (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny. See, e.g., Regents of Univ. of California v. Bakke, 438 U.S. 265, 290–91, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (opinion of Powell, J.) (treating race as a suspect classification); Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (treating gender as a quasi-suspect classification). When the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review. See, e.g., Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (discrimination based on age).
>
> *******
>
> Although sexual orientation has not been recognized in this circuit as a suspect or quasi-suspect classification, homosexuals do constitute an "identifiable group" for equal protection purposes. See Stemler, 126 F.3d at 873–74. Other circuits have likewise held that gay people constitute an identifiable group in the equal protection context. See, e.g., Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134–35 (9th Cir.2003) ("The plaintiffs are members of an identifiable class for equal protection purposes because they allege discrimination on the basis of sexual orientation."); Nabozny v. Podlesny, 92 F.3d 446, 457 (7th Cir.1996) ("[T]he Constitution prohibits intentional invidious discrimination between otherwise similarly situated persons based on one's membership in a definable minority, absent at least a rational basis for the discrimination. There can be little doubt that homosexuals are an identifiable minority subjected to discrimination in our society.").

*Davis v. Prison Health Services et al.*, No. 10-260, 2012 WL 1623216, at *6-7 (6th Cir. May 10, 2012).

Plaintiff claims that Defendants Culbertson, Ruhl, Childs, and Rose improperly attempted to have him evaluated for Gender Identity Disorder (GID), despite the fact that Plaintiff had been previously evaluated and found not to have GID.  However, Plaintiff fails to allege facts showing that the attempts to have him evaluated were motivated by a desire to discriminate against him, rather than a sincere belief that he was suffering from GID.  In the June 3, 2013, Mental Health Services Referral, Defendant Childs stated:

> After reading the Policy Directive 04.06.184 on Gender Identity Disorders it is the belief of all officers in 800 Unit he has this.  He walks around 800 Unit with skin tight orange shorts on with his male parts tunked [sic] away some how and he has female breast [sic] of very big size.  He has been caught with another male inmate in 900 unit about 2 months ago doing sexual favors.
>
> ****
>
> Needs to be seen by health care and have a complete Physical Examination and then he needs to be sen by a psychologist.  After all of this is done and you all come to the same finding.  He needs to be placed in a one man cell or sent to a facility that can handle him.

*See* docket #1-1, p. 1 of 14.

It is apparent from this referral that Defendant Childs' motivation was a sincere belief that Plaintiff had GID and that she was concerned about the facility's ability to appropriately manage Plaintiff.  Plaintiff fails to allege any specific facts in support of his contention that the efforts to have him evaluated for GID were motivated by a desire to discriminate against him on the basis of his sexual orientation.  Therefore, the court will dismiss these claims.

The court notes that the only specific factual allegations against Defendant Hunt are that he called Plaintiff a "fag."  Allegations that a prison official used racial slurs, standing alone, do not violate the Fourteenth Amendment's guarantee of equal protection. *See Price v. Lighthart*,

-10-

2010 WL 1741385, 2 -3 (W.D. Mich., 2010), *citing Williams v. Kaufman County,* 352 F.3d 994, 1013 & n. 61 (5th Cir.2003). Therefore, the Court concludes that Plaintiff's allegations against Defendant Hunt do not rise to the level of an equal protection violation. Nor do claims of abusive language and general harassment state a claim under the Eighth Amendment or the substantive due process clause. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994).

Plaintiff's remaining equal protection and Eighth Amendment claims against Defendants Myron, Lindenmuth, Juranik, Lancor, and Piazza that he was placed in a cell near the front of the unit where he could be observed by officers because he was gay, was not allowed to pick his own cell mate unlike heterosexual prisoners, was forced to wear a bra, was physically assaulted by another prisoner at the behest of Defendant Myron and that Defendant Lancor failed to protect him from that assault, and that Defendants Juranik and Piazza sexually assaulted him are not clearly frivolous. Therefore, the court will not dismiss these claims on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rutter, Bauman, Culbertson, Hunt, Ruhl, Rapelje, Childs and Rose will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Myron, Lindenmuth, Juranik, Lancor, and Piazza.

An Order consistent with this Opinion will be entered.

Dated:  1/7/2015                    /s/ R. Allan Edgar
                                   R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE

-11-